**MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP**
88 Pine Street
24th Floor
New York, New York 1005
Tel: (212) 483-9490

12 CIV 0772

Attorneys for Defendants,
ISR Systems and Sensors Corp., EMX Group, Inc.,
EMX International, Inc., EMX International, LLC,
James M. Herrmann, Robert V. Gibbs and
Timothy J. Arion

RECEIVED
JAN 3 1 2012
U.S.D.C. S.D.N.Y.
CASHIERS

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RECURRENT CAPITAL BRIDGE FUND I, LLC, )<br>CRAGMONT CAPITAL LLC and )<br>ETHAN EINWOHNER )<br> )<br>       Plaintiffs, )<br> )<br>v. )<br> )<br>ISR SYSTEMS and SENSORS CORP., )<br>EMX GROUP, INC., EMX INTERNATIONAL, )<br>INC., EMX INTERNATIONAL LLC, )<br>JAMES M. HERRMANN, ROBERT V. GIBBS )<br>and TIMOTHY J. ARION, )<br> )<br>       Defendants. )<br> ) | CIVIL ACTION NO.: |

## CIVIL ACTION – NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that the undersigned attorneys for Defendants, ISR Systems

and Sensors Corp., EMX Group, Inc., EMX International, Inc., EMX International, LLC, James

M. Herrmann, Robert V. Gibbs, Timothy J. Arion ("Defendants"), petition this Honorable Court

for an order pursuant to 28 U.S.C. § 1441, *et seq.*, removing to the United States District Court,

Southern District of New York, a matter instituted in the Supreme Court of New York, County of New York, bearing Index No. 653514/2011.

**PLEASE TAKE FURTHER NOTICE** that a copy of this removal petition has been filed with the Clerk of the Supreme Court of New York, County of New York, thereby effecting removal pursuant to 28 U.S.C. § 1446(b).

**PLEASE TAKE FURTHER NOTICE** that by effecting removal of this action, Defendants reserve all rights to raise any and all defenses available under the Federal Rules of Civil Procedure including, but not limited to FED. R. CIV. P. 12.

**PLEASE TAKE FURTHER NOTICE** that in support of this notice of removal, Defendants shall rely upon the following:

1.     On or about December 19, 2011, a complaint was filed in the Supreme Court of the State of New York, County of New York, bearing index number 653514/2011. Annexed hereto as Exhibit "A," is a copy of the summons and verified complaint, which constitutes all process, pleadings and/or orders served upon or received by Defendants to date within the meaning and intent of 28 U.S.C. § 1446.

2.     Defendant EMX International LLC's registered agent was served with the summons and complaint on December 27, 2011. Defendants first had notice of the institution of suit and of the basis for the removal of this civil action upon Defendants' Connecticut counsel's receipt of a notice of service from Defendant EMX International LLC's registered agent in Delaware attaching the summons and complaint annexed hereto as Exhibit "A" on December 29, 2011. Removal is therefore timely under 28 U.S.C. § 1446(b) in that the filing of the within petition occurred prior to the expiration of thirty days of Defendants' receipt of notice of the summons and complaint.

3.     The Court's review of the complaint will reveal that at the time of its filing, including this removal petition, Plaintiff Recurrent Capital Bridge Fund I, LLC ("Recurrent") is a limited liability corporation and maintains its principal place of business in New York, New York, Plaintiff Cragmont Capital LLC ("Cragmont") is a limited liability corporation and maintains its principal place of business in New York, New York and Plaintiff Ethan Einwohner is a resident of New York, New York and as such Plaintiffs are citizens of the State of New York within the meaning and intent of 28 U.S.C. § 1332.

4.     As further set forth in the complaint, at the time of the filing of the complaint and this removal petition, Defendant ISR Systems and Sensors Corp. is a Delaware corporation with its principal place of business in Naples, Florida, Defendant EMX Group, Inc. is a Florida corporation with its principle place of business in Naples, Florida, Defendant EMX International, Inc. is a Delaware corporation with its principal place of business in Naples, Florida, Defendant EMX International, LLC is a limited liability company with its principle place of business in Melbourne, Florida, Defendant James M. Herrmann is a resident of the State of Florida, Defendant Robert V. Gibbs is a resident of the State of Florida and Defendant Timothy J. Arion is a resident of the State of Florida. Defendants are citizens of the State of Delaware and the State of Florida within the meaning and intent of 28 U.S.C. § 1332.

5.     There is complete diversity of citizenship between the within parties within the meaning and intent of 28 U.S.C. § 1332.

6.     The Court's further review of the complaint will reveal that the gravamen of the dispute concerns Plaintiffs' allegations that Defendants breached certain contractual obligations. Plaintiffs seek judgment against Defendants for damages in excess of $1,000,000.00.

7.    As is evident from the face of the complaint, the amount in controversy between the parties exceeds the sum of $75,000.00, exclusive of interest and costs of suit. There is thus the requisite amount in controversy as required by 28 U.S.C. § 1332.

8.    This Court maintains jurisdiction over this matter pursuant to, and in accordance with, 28 U.S.C. § 1441. Removal is therefore appropriate under and pursuant to 28 U.S.C. § 1441(a) and (b).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP**
Attorneys for Defendants,
ISR Systems and Sensors Corp., EMX Group, Inc.,
EMX International, Inc., EMX International, LLC,
James M. Herrmann, Robert V. Gibbs and
Timothy J. Arion

By: _____
        Scott S. Flynn (SF7469)

Date: January 25, 2012

EXHIBIT A

 **CT Corporation**

**TO:** Annemarie Brown
McElroy, Deutsch, Mulvaney & Carpenter/PH, LLP
One State Street
Hartford, CT 06103

**RE:** **Process Served in Delaware**

**FOR:** EMX International, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Recurrent Capital Bridge Fund I, LLC, et al., Pltfs. vs. ISR Systems and Sensors Corp., et al. including EMX International LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Notice, Consent, Attachment, Complaint |
| **COURT/AGENCY:** | New York County: Supreme Court, NY Case # 65351411 |
| **NATURE OF ACTION:** | Breach of Contract - Arising from Defendant's rights under two promissory notes and to exclude Plaintiffs from receiving their due equity interests in a highly lucrative roll-up of defense technology companies |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/27/2011 at 14:00 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after proof of service is filed |
| **ATTORNEY(S) / SENDER(S):** | Matthew J. Press Law Office of Matthew J. Press The Chrysler Building 405 Lexington Avenue Seventh Floor New York, NY 10174 212-922-1111 |
| **REMARKS:** | Please note the process server underlined and/or highlighted the entity being served prior to receipt by CT. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 793059531300 |
| **SIGNED:** | The Corporation Trust Company |
| **PER:** | Scott LaScala |
| **ADDRESS:** | 1209 Orange Street Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RECURRENT CAPITAL BRIDGE FUND I, LLC,
CRAGMONT CAPITAL LLC AND ETHAN
EINWOHNER,

                                Plaintiffs,

                -against-

ISR SYSTEMS AND SENSORS CORP., EMX GROUP,
INC., EMX INTERNATIONAL, INC., EMX
INTERNATIONAL LLC, JAMES M. HERRMANN,
ROBERT V. GIBBS AND TIMOTHY J. ARION,

                          Defendants.

Index No. GS 3514/11

**SUMMONS**

Filed December 19, 2011

To the above named Defendants:

      YOU ARE HEREBY SUMMONED to appear in this action and to serve a copy of your answer on the attorneys for the Plaintiffs within twenty (20) days after service of this Summons, exclusive of the day of service; or otherwise as provided by law as indicated below. If this summons is served by delivery to any person other than you personally, or is served outside the State of New York, or by publication, or by any means other than personal delivery to you within the State of New York, you are allowed thirty (30) days after proof of service thereof is filed with the Clerk of this Court within which to appear and answer. In case of your failure to answer, judgment will be taken against you by default for the relief demanded herein.

      The basis for venue in this action is C.P.L.R. 503(a). The nature of this action is breach of fiduciary duty, misappropriation of corporate opportunity, breach of contract, promissory estoppels, *quantum meruit*.

Dated: December 19, 2011

Defendants' Addresses:

ISR Systems & Sensors Corporation, c/o James M. Herrmann, Chief Executive Officer, 420 Dow Rd., Suite C, Melbourne, Florida 32934

EMX Group, Inc., c/o Timothy J. Arion, 420 Dow Rd., Suite C, Melbourne, Florida 32934, as registered agent for service of process

EMX International, Inc., c/o Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, DE 19801, as registered agent for service of process

EMX International LLC, c/o The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801, as registered agent for service of process

James M. Herrman, 420 Dow Rd., Suite C, Melbourne, Florida 32934

Robert V. Gibbs, 420 Dow Rd., Suite C, Melbourne, Florida 32934

Timothy J. Arion, 420 Dow Rd., Suite C, Melbourne, Florida 32934

DATED:   December 19, 2010

LAW OFFICE OF MATTHEW J. PRESS

By:

Matthew J. Press
The Chrysler Building
405 Lexington Avenue, Seventh Floor
New York, NY 10174
tel: (212) 922-1111
fax: (347) 342-3882
mpress@presslawfirm.com

*Attorneys for Plaintiffs*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

RECURRENT CAPITAL BRIDGE FUND I, LLC,
CRAGMONT CAPITAL LLC AND ETHAN
EINWOHNER,

                Plaintiffs,

-against-

ISR SYSTEMS AND SENSORS CORP., EMX GROUP,
INC., EMX INTERNATIONAL, INC., EMX
INTERNATIONAL LLC, JAMES M. HERRMANN,
ROBERT V. GIBBS AND TIMOTHY J. ARION,

                Defendants.

Index No. _____

---

## COURT NOTICE REGARDING AVAILABILITY OF
## ELECTRONIC FILING SUPREME COURT CASES

PLEASE TAKE NOTICE that plaintiff in the case captioned above intends that this

matter proceed as an electronically-filed case in the New York State Courts Electronic Filing

System ("NYSCEF") in accordance with the procedures therefore, described below. Filing and

service of papers by electronic means cannot be made by a party nor electronic service be made

upon a party unless that party has consented to use of the system. Within ten days after service

of this Notice, each party served must indicate whether or not it consents to electronic filing and

service through NYSCEF for this case.

### General Information

In New York State, actions may be commenced and cases processed by means of the

NYSCEF system in (1) tort, commercial, and tax certiorari cases in the Supreme Court in New

York City and in Albany, Essex, Livingston, Monroe, Nassau, Niagara, Onondaga, Suffolk, Sullivan and Westchester Counties; and (2) any case type in Broome and Erie County Supreme Courts as authorized by the court. Electronic filing is also authorized for cases in the Court of Claims and Surrogate's Court cases in Chautauqua, Erie, Monroe, Queens and Suffolk Counties and in no fault cases in New York City Civil Court. Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served in a simple, convenient and expeditious manner. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website (www.nycourts.gov/efile), which can be done at any time of the day or night on any day of the week. Documents in Supreme Court cases are deemed filed when received by the NYSCEF server (with payment if required), regardless of whether the court or the County Clerk's Office is open. Service between and among consenting users is effectuated by posting documents with the Website, which immediately sends automatic e-mail notice to all such parties. There is no fee to use the NYSCEF system, whether for filing, service, or consultation of the electronic docket, nor is there a charge to print documents from the docket. Normal filing fees must be paid, but this can be done by credit or debit card on-line. The use of NYSCEF in Supreme Court is governed by Section 202.5-b of the Uniform Rules for the Trial Courts.

## Instructions

1. Service of this Notice constitutes a statement of intent by the undersigned that the NYSCEF system be used in this case. When an action or proceeding is being commenced by means of the NYSCEF system, this Notice must accompany service of the initiating papers.

2. **Within ten days after service of this Notice**, the party served shall file with the court and serve on all parties the attached Consent to E-Filing, or, if the party does not wish to consent,

a declination of consent. Consent to electronic filing does not constitute an appearance in the action. If the party served is represented by an attorney who has already registered as a NYSCEF Filing User, that attorney may consent electronically on the NYSCEF site. Consent to NYSCEF is required of all current parties to the case in order for it to proceed as a NYSCEF matter, or, if fewer than all parties consent, where permitted by the court, NYSCEF may be used by and between or among consenting parties only.

3. Once parties agree that the case will be subject to NYSCEF, each participating attorney, unless already registered, must **PROMPTLY** complete a Filing User Registration form (see the "Forms" section of the Website) and submit it to the NYSCEF Resource Center (efile@courts.state.ny.us) in order to obtain the confidential Filing User Identification Number and Password necessary to use the system.

4. For additional information about NYSCEF, see the *User's Manual* and *Frequently Asked Questions* on the Website, or contact the court in question or the NYSCEF Resource Center (at 646-386-3033 or efile@courts.state.ny.us).

DATED: December 19, 2011

LAW OFFICE OF MATTHEW J. PRESS

By: /s/
_____

Matthew J. Press
The Chrysler Building
405 Lexington Avenue, Seventh Floor
New York, NY 10174
tel: (212) 922-1111
fax: (347) 342-3882
mpress@presslawfirm.com

*Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

RECURRENT CAPITAL BRIDGE FUND I, LLC,
CRAGMONT CAPITAL LLC AND ETHAN
EINWOHNER,

                                    Plaintiffs,

                    -against-

ISR SYSTEMS AND SENSORS CORP., EMX GROUP,
INC., EMX INTERNATIONAL, INC., EMX
INTERNATIONAL LLC, JAMES M. HERRMANN,
ROBERT V. GIBBS AND TIMOTHY J. ARION,

                                    Defendants.

---

Index No. _____

**SUMMONS**

---

## CONSENT TO E-FILING SUPREME COURT CASE

I, _____ , am a self-represented party or an attorney for a party in the above-captioned action, and I consent to the use of the New York State Courts Electronic Filing System ("NYSCEF") in this case. I further consent to be bound by the service and filing provisions of the NYSCEF Rules (Section 202.5-b of the Uniform Rules for the Trial Courts) and will comply with the procedures of the NYSCEF system, which are reflected in the *User's Manual* approved by the Chief Administrator of the Courts and posted on the NYSCEF website. Pursuant to the Rules, I have, or will promptly hereafter, set forth in my NYSCEF registration application form an e-mail address that shall constitute the E-Mail Service Address of Record.

* Under the Rules, consent of parties is required for filing and service by or upon those parties through NYSCEF. If an attorney has previously registered as a NYSCEF Filing User, the consent may be filed and served by means of the NYSCEF system.

** Although under the Rules electronic service is effectuated only through the E-Mail Service Address of Record (Primary Address), additional notice of filings may be obtained through the listing of E-Mail General Addresses of Record. Such addresses may be listed on the registration application and may be recorded in the Profile Section of the NYSCEF system. See www.nycourts.gov/efile.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

RECURRENT CAPITAL BRIDGE FUND I, LLC,
CRAGMONT CAPITAL LLC AND ETHAN
EINWOHNER,

                              Plaintiffs,

-against-

ISR SYSTEMS AND SENSORS CORP., EMX GROUP,
INC., EMX INTERNATIONAL, INC., EMX
INTERNATIONAL LLC, JAMES M. HERRMANN,
ROBERT V. GIBBS AND TIMOTHY J. ARION,

                              Defendants.

Index No. 653514/11

**COMPLAINT**

---

Plaintiffs Recurrent Capital Bridge Fund I, LLC ("Recurrent"), Cragmont Capital,

LLC ("Cragmont") and Ethan Einwohner, by and through their undersigned attorneys,

bring this Complaint against Defendants ISR Systems and Sensors Corporation ("ISR"),

EMX Group, Inc. ("EMX Group"), EMX International, Inc. ("EMX International I"),

EMX International LLC ("EMX International II"), James M. Herrmann, Robert V. Gibbs

and Timothy J. Arion, and in support thereof allege the following:

### BACKGROUND

1.      This action arises from Defendants' fraudulent scheme to circumvent

Plaintiffs' rights under two promissory notes and to exclude Plaintiffs from receiving

their due equity interests in a highly lucrative roll-up of defense technology companies,

including EMX, Inc., a Florida-based manufacturer of thermal imaging devices.

2.      As set forth below, Messrs. James Herrmann and Robert V. Gibbs, along

with Timothy Arion, each acting individually and as an officer and director of EMX International II—as well as of two identically owned affiliates and alter-egos before it, Defendants EMX Group and EMX International I—conspired to defraud Recurrent and Mr. Einwohner of their rightful 5% and 10% equity interests in the company, believed to be worth over $1,000,000, as well to frustrate Recurrent's and Cragmont's right to payment of collectively over $400,000, plus the issuance of nearly 25,000 shares of the company, under the terms of a Bridge Note, dated May 22, 2008, and a Promissory Note, dated August 2, 2010.

3.    Messrs. Herrmann and Gibbs, acting on behalf of the other Defendants, also fraudulently induced Mr. Einwohner to perform sophisticated financial analysis and business development services towards the acquisition of EMX, worth no less than $72,500, which in fact facilitated the acquisition of EMX, and thus were unjustly enriched by this amount.

## PARTIES

4.    Plaintiff Recurrent is a Delaware limited liability company with its principal place of business in New York, New York.

5.    Plaintiff Cragmont is a Delaware limited liability company with its principal place of business in New York, New York.

6.    Plaintiff Ethan Einwohner is a resident of New York, New York.

7.    Defendant ISR is a Delaware corporation with its principal place of business at 6597 Nicholas Boulevard, Unit 1504, Naples, Florida 34108.

8.    Defendant EMX Group is a Florida corporation with its principal place of business at 6597 Nicholas Boulevard, Unit 1504, Naples, Florida 34108.

2

9.    Defendant EMX International I is a Delaware corporation with its principal place of business at 6597 Nicholas Boulevard, Unit 1504, Naples, Florida 34108.

10.    Defendant EMX International II is a Delaware limited liability company with its principal place of business at 420 Dow Rd., Suite C, Melbourne, Florida 32934.

11.    Defendant James M. Herrman is a resident of Florida with an address at 420 Dow Rd., Suite C, Melbourne, Florida 32934.

12.    Defendant Robert V. Gibbs is a resident of Florida with an address at 6597 Nicholas Boulevard, Unit 404, Naples, FL 34108.

13.    Defendant Timothy J. Arion is a resident of Florida with an address at 1880 Oak Grove Drive, Orlando, FL 32820.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over Defendant pursuant to CPLR § 302, as Defendants transacted business within the State of New York and committed tortious acts therein.

15.    Venue is proper in this County pursuant to CPLR § 503(a).

## FACTUAL ALLEGATIONS

16.    At all relevant times, Defendant Herrmann was the President, Chief Executive Officer and a major shareholder of ISR. Similarly, at all relevant times, Defendant Arion was a director and a major shareholder of ISR.

17.    According to disclosure materials provided to Plaintiffs in May 2008, ISR was formed as a platform for the acquisition and integration of a series of accretive businesses in the intelligence, surveillance and reconnaissance sectors, including the

3

specific target companies Wave Technologies, Inc. ("Wave"), SensArray Infrared Corporation ("SensArray"), and EMX, Inc. ("EMX"). ISR projected that the combination of these target companies—along with others in the relatively unconsolidated defense industry—would be highly lucrative to its shareholders. As set forth below, ISR developed and refined its business model and strategy in collaboration with lawyers and accountants paid for, in part, by Plaintiff Recurrent.

18.     ISR represented to Plaintiffs that it had entered into binding agreements and plans of merger under which ISR would acquire 100% of the outstanding capital stock of all three target companies, to create a combined entity with a pre-money valuation of $40,000,000. Through a private placement of its securities, ISR proposed to raise a minimum of $15,000,000, and a maximum of $18,000,000, to finance the acquisition of the companies and for the development of the combined business (the "Financing"). Thereafter, upon acquisition of the target companies, ISR proposed to enter into a reverse merger with an inactive publicly traded "shell" corporation with its common stock registered under the Securities Exchange Act of 1934 (the "Reverse Merger").

## The Bridge Offering

19.     To obtain interim financing, covering the professional services and other costs of the foregoing transactions, ISR made a prior offering of its common stock and notes to bridge investors, known as the "Bridge Offering." Recurrent was an investor in the Bridge Offering.

20.     In a Subscription Agreement and Promissory Note, each dated May 22, 2008, Recurrent, by its President, Mr. Einwohner, extended a $250,000 bridge loan (the

"Bridge Note") to, and simultaneously purchased 187,500 "Bridge Shares" of the common stock of, ISR.

21.    Under § 3(a) of the Subscription Agreement, ISR represented and warranted that it was "duly formed and validly existing in good standing under the laws of Delaware. . . ." Under § 3(d) of the Subscription Agreement, ISR represented and warranted that it would use its best efforts to "(i) enter into definitive agreements to acquire the Target Companies, (ii) consummate a Financing, and (iii) subject to the foregoing, locate and effect a Reverse Merger with a Public Company." Section 8(a) of the Subscription Agreement provides that it shall be governed and construed under the laws of the State of New York.

22.    Under the Bridge Note, ISR promised to pay the principal sum of $250,000, without interest, on or before December 31, 2008, and thereafter pay default interest at a rate of 15% per annum, compounded on a monthly basis. Under § 2.2(b) of the Bridge Note, the entire outstanding principal amount, along with all applicable default interest, was subject to mandatory prepayment out of the net proceeds of the Financing.

23.    As set forth in ISR's private placement memorandum, provided to Recurrent in due diligence, even after dilution by a full $18,000,000 subscription in the Financing, the acquisition of Wave, SensArray and EMX, and the Reverse Merger, Recurrent would have a 2.34% equity interest in the resulting company, with an equity value of at least $936,000.

24.    Although neither Mr. Herrmann, nor ISR, advised Recurrent of its percentage interest in ISR prior to the proposed Financing and Reverse Merger, upon information and belief, Recurrent's 187,500 Bridge Shares in ISR represented a

5

substantially higher percentage interest in ISR.

### ISR Defaults on the Bridge Note

25.   In October 2008, ISR raised least $3,200,000 in the Financing.

26.   Thereafter, in late-November 2008, the founder and Chief Executive Officer of SensArray died, terminating SensArray as a viable company, and severely limiting the cashflow available to ISR to service its debt following the acquisition. Mr. Herrmann and ISR did not disclose this highly material fact to Mr. Einwohner and Recurrent until a telephone call on January 20, 2009.

27.   Ultimately, ISR did not complete the Financing and, on December 31, 2008, ISR defaulted on the Bridge Note and the entire principal amount, as well as an additional $140,986 in interest at December 1, 2011, remains outstanding, for a total of $390,986.00.

28.   Despite repeated written demands by Mr. Einwohner and Recurrent, the Bridge Note has not been paid to date.

29.   Upon investigation by Plaintiffs, it appears that, in breach of Section 3(a) of the Subscription Agreement, ISR was never formed as a Delaware corporation. Thus, among other things, no limited liability entity separates Plaintiffs from the owners of ISR, including Defendants Herrmann and Arion.

### Mr. Herrmann Represents that ISR Would Continue to Pursue EMX

30.   Following ISR's default on the Bridge Note, Mr. Herrmann repeatedly represented to Recurrent and Mr. Einwohner that he and ISR were working to salvage the deal for ISR's shareholders and to acquire the remaining two target companies—Wave and EMX.

6

31.     Indeed, in teleconferences on January 20 and 22, 2009, and in an email dated January 23, 2009, Mr. Herrmann stated to Recurrent that there was a new potential investor and requested that Recurrent provide additional financing to help consummate the acquisition of Wave and EMX.

32.     Thereafter, throughout 2009 and early 2010, Mr. Herrmann stated directly, and through agents, that ISR intended to complete the acquisition of at least EMX, as originally promised, as a platform for the roll-up of further defense technology companies.

**Messrs. Herrmann and Gibbs Form EMX Group to Acquire EMX**

33.     In May 2010, Mr. Einwohner learned that, in breach of his fiduciary duties to the shareholders of ISR, Mr. Herrmann plotted to misappropriate ISR's corporate opportunity and acquire EMX himself—through a newly formed corporation, EMX Group, Inc. ("EMX Group")—circumventing Recurrent's rights as a creditor and shareholder of ISR.

34.     Pursuant to this fraudulent scheme, Mr. Herrmann obtained the written commitment of EMX's Chief Executive Officer, Mr. Arion, to sell 100% of his company to EMX Group, and not to ISR, with Mr. Arion to be an officer, director and shareholder of EMX Group.

35.     When Mr. Einwohner objected, Mr. Herrmann referred him to Mr. Herrmann's new partner and shareholder in EMX Group, Robert V. Gibbs, who in the 1980's was charged with looting over $18,000,000 under his management from the Bank of International Credit Ltd., to invest in his own personal ventures.

36.     Thereafter, in teleconferences and a meeting on May 25, 2010 in New

York City, Mr. Gibbs told Mr. Einwohner that if Recurrent wanted to salvage its investment in ISR, Mr. Einwohner had to "help out," and provide financial and personal services in support of the acquisition of EMX by Messrs. Herrmann and Gibbs, and EMX Group—in which Recurrent had no legal interest.

37.    In these and other meetings, Mr. Gibbs—aiding and abetting Mr. Herrmann's breach of his fiduciary duties—fraudulently misrepresented to Mr. Einwohner that if he and Recurrent did so, in consideration of its Bridge Shares and Bridge Note, Recurrent would receive a 5%, and Mr. Einwohner a 10%, equity interest in the resulting company. Messrs. Gibbs and/or Herrmann repeated this promise to Mr. Einwohner on numerous occasions. Similarly, on numerous occasions Mr. Arion encouraged Mr. Einwohner and Recurrent to believe that they would be granted such equity in the company, as promised by Messrs. Herrmann and Gibbs.

### Mr. Einwohner and Recurrent Provide Personal Services in Reliance Upon Messrs. Herrmann's and Gibb's Misrepresentations

38.    In reliance upon Mr. Gibb's misrepresentations—consistently affirmed and ratified by Messrs. Herrmann and Arion through various acts and omissions—between May and December 2010, Mr. Einwohner and Recurrent invested substantial time and effort in providing financial advisory, investor relations and business development services in support of the acquisition of EMX by EMX Group—with the knowledge and approval of Messrs. Herrman, Gibbs and Arion.

39.    Mr. Einwohner performed sophisticated financial analysis of potential transactions, prepared investor presentations and participated in numerous strategy sessions. Mr. Einwohner traveled to locations throughout the United States to pitch potential investors. Mr. Einwohner also performed analyses and conducted meetings

8

with Anderson & Strutwick, Inc., the investment bankers selected by Defendants to underwrite the acquisition of EMX—which, in fact, did so only months later.

40.     On numerous occasions, Messrs. Herrmann, Gibbs and Arion acknowledged Mr. Einwohner's work to be of great value to the enterprise.     The reasonable value of the services provided by Mr. Einwohner and Recurrent was no less than $72,500.

41.     Throughout this period, Messrs. Herrmann, Gibbs and Arion induced Mr. Einwohner to work at no charge through further misrepresentions that he and Recurrent would receive the promised 10% and 5% equity interests, and that Mr. Einwohner would be a member of management of the resulting company.

42.     For example, an August 20, 2010 memorandum prepared by Defendants' counsel, and presented to Mr. Einwohner by Messrs. Herrmann and Gibbs, indicated that Recurrent would receive at least a 3% equity interest in a much larger company— including EMX, Wave and SensArray. Similarly, in an email dated September 18, 2010, Mr. Gibbs wrote that Mr. Einwohner should include in a presentation to investors the fact that "you [Mr. Einwohner], me and Jim will be working to market and manage the company." Finally, a draft version of the EMX International I website identified Mr. Einwohner as an officer of the company, specializing in "financial analysis," and linked to a company email address, e.einwohner@emx-intl.com.

43.     Mr. Einwohner and Recurrent reasonably relied upon such representations in investing their time and effort on behalf of the company, to secure their promised equity interests.

9

### The Cragmont Note

44.     Messrs. Herrman and Gibbs even duped Mr. Einwohner into making a loan to EMX Group—which Mr. Gibbs later conceded had no officers, directors or shareholders, and was wholly uncapitalized, and which later was replaced, *seriatim*, with EMX International I and II—through Mr. Einwohner's personal investment company, Cragmont (the "Cragmont Note").

45.     Under the Cragmont Note, dated August 3, 2010, Cragmont loaned $7,000, payable no later than October 3, 2010, with default interest accruing at a rate of 2%, compounded monthly, payable in cash or common stock of the company, issued at $0.01 per share. Cragmont retained a 50% interest in the Cragmont Note.

46.     In addition, under the Cragmont Note, after the expiration of a two week cure period, the company was obligated to issue to Cragmont at least 30,000 shares of its common stock (the "Default Shares").

47.     To date, no portion of the Cragmont Note has been repaid, and no Default Shares were issued to Cragmont. As of December 1, 2011, no less than $184.00 in interest is outstanding on the Cragmont Note, convertible to at least 18,400 in additional shares of the company, of which Cragmont would be entitled to 9,200.

### The November 9 Term Sheet

48.     On October 16, 2010, in an attempt to avoid their obligations under the Cragmont Note, and in breach of their fiduciary duties to Mr. Einwohner and Recurrent, Messrs. Herrmann, Gibbs and Arion formed EMX International I and purported to assign to it the rights, resources and corporate opportunities of EMX Group, including the opportunity to acquire EMX. At all relevant times, EMX International I had no tangible

assets and observed no corporate formalities.

49.    Thereafter, in an email dated November 9, 2010, entitled "Acquisition Group Ownership and Payment Plan for EMX International Inc.," copied to Messrs. Herrmann and provided to Mr. Einwohner (the "November 9 Term Sheet"), Mr. Gibbs presented a draft term sheet for the acquisition of 100% of the stock of EMX, Inc. by EMX International I. Under it, consistent with the representations previously made to Mr. Einwohner, founders shares of EMX International I would be owned 25% by Mr. Arion, 25% by Mr. Herrmann, 25% by Mr. Gibbs, 10% by Mr. Einwohner and 5% by Recurrent, with the remaining 10% held in trust.

50.    In December 2010, however, Messrs. Herrmann and Gibbs abruptly ceased all contact with Mr. Einwohner and refused to respond to his calls and emails. Although in one of their last communications, Mr. Gibbs told Mr. Einwohner "nobody said you would not be compensated," to date Mr. Einwohner and Recurrent have received absolutely nothing for their substantial outlay of money, strategic input and effort.

### Defendants Finance and Acquire EMX and Another Company

51.    Pursuant to their scheme, after defrauding Mr. Einwohner, Recurrent and Cragmont of over six months of dedicated financial and personal services, Messrs. Herrmann, Gibbs and Arion proceeded to carry out substantially the same transaction contemplated in the November 9 Term Sheet, with Anderson & Strutwick—with whom Mr. Einwohner worked closely only months before—as underwriters.

52.    First, on January 18, 2011, in breach of their fiduciary duties to Plaintiffs, Messrs. Herrmann, Gibbs and Arion formed yet another acquisition company— Defendant EMX International II—and purported to assign to it the rights, resources and

11

corporate opportunities of EMX International I, including the opportunity to acquire EMX. Upon information and belief, Defendants did so for no valid business purpose, but solely in an effort to frustrate the rights and claims of Plaintiffs.

53.     Thereafter, as Mr. Einwohner and Recurrent have learned, on July, 2011, Messrs. Herrmann, Gibbs, Mr. Arion, aided and abetted by their counsel, Edward Deutsch, and James Teague, all officers and directors of EMX International II, proceeded to consummate the acquisition of EMX and an undisclosed second defense technology company—upon the foundation of Mr. Einwohner's financial analysis, investor relations and business development efforts. Upon information and belief, the legal work product used in the transaction was based in whole, or in part, upon the materials previously purchased with the proceeds of Recurrent's Bridge Note.

54.     To date, Plaintiffs have not received their promised combined 15% equity interest in the company ultimately used to acquire EMX, nor have any of Defendants repaid Plaintiffs Recurrent and Cragmont under the terms of the Bridge Note and Promissory Note.

## FIRST CAUSE OF ACTION

### (Breach of Contract against Defendants ISR, Herrmann, EMX Group, EMX International I and EMX International II)

55.     Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

56.     Under the Bridge Note, ISR promised to pay Recurrent the principal sum of $250,000, without interest, on or before December 31, 2008, and thereafter pay default interest at a rate of 15% per annum, compounded on a monthly basis.

57.     ISR defaulted on the Bridge Note and, to date, the entire principal amount, as well as an additional $140,986 in interest at December 1, 2011, remains outstanding,

12

for a total of $390,986.00.

58. In an effort to circumvent Recurrent's rights as a creditor of ISR, Mr. Herrmann fraudulently transferred the assets and opportunities of ISR to its affiliates and alter-egos EMX Group, EMX International I and EMX International II—all under identical ownership and control—which are jointly and severally liable as a consequence thereof.

59. Under Section 3.2 of the Bridge Note, Recurrent is entitled to its reasonable costs and expenses (including, without limitation, reasonable counsels' fees) in bringing this action.

## SECOND CAUSE OF ACTION

### (Breach of Contract against Defendants EMX Group, Herrmann, Gibbs
### EMX International I and EMX International II)

60. Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

61. Under the Cragmont Note, Cragmont loaned $7,000 to EMX Group, payable no later than October 3, 2010, with default interest accruing at a rate of 2%, compounded monthly, payable in cash or common stock of the company, issued at $0.01 per share. Cragmont retained a 50% interest in the Cragmont Note.

62. In addition, under the Cragmont Note, after the expiration of a two week cure period, EMX Group was obligated to issue to Cragmont 30,000 shares of its common stock (the "Default Shares").

63. In an effort to circumvent Cragmont's rights as a creditor of EMX Group, —which, as Mr. Gibbs acknowledged, was wholly uncapitalized and had no officers, directors or shareholders—Messrs Herrmann and Gibbs fraudulently transferred the

rights, resources and opportunities of EMX Group—including including the opportunity to acquire EMX—to its affiliates and alter-egos EMX International I and II, under identical ownership and control.

64.    To date, no portion of the Cragmont Note has been repaid, and no Default Shares were issued to Cragmont.  As of December 1, 2011, no less than $184.00 in interest is outstanding on the Cragmont Note.  Accordingly, Cragmont is entitled to payment of $3,500, along damages for failure to issue 15,000 Default Shares of EMX International II, and damages for the failure to issue at least 9,200 additional shares of EMX International II in lieu of interest.

65.    Under Section 2 of the Cragmont Note, Cragmont is entitled to reasonable attorneys' fees, court cost and other expenses incurred by Cragmont in enforcing the terms of the agreement.

### THIRD CAUSE OF ACTION
#### (Breach of Fiduciary Duty against Defendant Herrmann, directly and derivatively, on behalf of ISR)

66.    Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

67.    As Chief Executive Officer and a major shareholder of ISR, Herrmann had fiduciary duties to Recurrent, as a shareholder and creditor of the company.

68.    Herrmann breached his fiduciary duties by, among other things, misappropriating the assets and opportunities of ISR, including non-public information concerning the target company EMX and the opportunity to acquire EMX, and transferring such assets and opportunities to EMX Group, EMX International I and EMX International II, each of which was under identical ownership and control.

14

69. Herrmann did so in an attempt to defeat Recurrent's rights as a shareholder and creditor of ISR and keep the benefits of the ultimate acquisition of EMX to himself and his partners.

70. Given Herrmann's position as Chief Executive Officer and a major shareholder, and the foregoing history of hostility and misconduct, any demand that ISR bring action against Herrmann would be futile.

71. As a consequence thereof, Plaintiff Recurrent suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

### FOURTH CAUSE OF ACTION

**(Aiding and Abetting Breach of Fiduciary Duty against Defendants EMX Group, EMX International I, EMX International II, Gibbs and Arion, directly and derivatively on behalf of ISR)**

72. Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

73. As set forth above, with knowledge of Herrman's foregoing breaches of fiduciary duties, Messrs. Gibbs and Arion, and EMX Group, EMX International I, EMX International II, knowingly induced or participated in such breaches, to defeat Recurrent's rights as a shareholder and creditor of ISR and to keep for themselves the benefits of the acquisition of EMX.

74. Given the foregoing history of hostility and misconduct, any demand that ISR bring action against Defendants Gibbs, Arion, EMX Group, EMX International I and II would be futile.

75. As a consequence thereof, Plaintiff Recurrent suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

## FIFTH CAUSE OF ACTION

### (Misappropriation of a Corporate Opportunity against Defendants Herrmann, EMX Group, EMX International I and EMX International II, directly and derivatively on behalf of ISR)

76.     Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

77.     As Chief Executive Officer and a major shareholder of ISR, Herrmann misappropriated the assets and opportunities of ISR—including non-public information concerning the target company EMX and the opportunity to acquire EMX—and transferred them successively to EMX Group, EMX International I and EMX International II, each of which was under his control, as Chief Executive Officer and a major shareholder.

78.     Herrmann did so in an attempt to defeat Recurrent's rights as a shareholder and creditor of ISR and keep the benefits of the acquisition of EMX to himself and his partners.

79.     Defendants EMX Group, EMX International I and/or EMX International II, were the recipients of the assets and opportunities rightfully belonging to ISR.

80.     Given the foregoing history of hostility and misconduct, any demand that ISR bring action against Defendants Herrmann, Gibbs, Arion, EMX Group, EMX International I and II would be futile.

81.     As a consequence thereof, Plaintiff Recurrent suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

16

## SIXTH CAUSE OF ACTION

### (Breach of Contract against Defendants Herrmann, Gibbs, Arion
### EMX Group, EMX International I and EMX International II)

82.     Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

83.     As set forth above, Messrs. Herrmann, Gibbs and Arion, acting for themselves, EMX Group and EMX International I, promised Mr. Einwohner a 10%, and Recurrent a 5%, equity interest in the entity ultimately used to acquire EMX.

84.     By their performance of services between May and December 2010, Mr. Einwohner and Recurrent accepted such offer.

85.     Defendants Herrmann, Gibbs, Arion, EMX Group and EMX International I and II breached the contract.

86.     As a consequence thereof, Plaintiff Recurrent suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

## SEVENTH CAUSE OF ACTION

### (Promissory Estoppel against Defendants Herrmann, Gibbs, Arion
### EMX Group, EMX International I and EMX International II)

87.     Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

88.     As set forth above, Messrs. Herrmann, Gibbs and Arion, acting for themselves, EMX Group and EMX International I, through a clear and unambiguous promise of a 10% and 5% equity interest, respectively, in the entity ultimately to acquire EMX, induced Mr. Einwohner and Recurrent to invest substantial time and effort in providing financial advisory, investor relations and business development services in support of the acquisition of EMX.

17

89. The valuable services provided by Mr. Einwohner and Recurrent in fact contributed to the successful acquisition of EMX by Defendants.

90. Defendants could reasonably foresee Mr. Einwohner's and Recurrent's reliance upon Defendants' clear and unambiguous promises.

91. Mr. Einwohner and Recurrent were injured as a consequence of Defendants' unconscionable misconduct.

92. As a consequence thereof, Plaintiff Recurrent suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

### EIGHTH CAUSE OF ACTION

#### (Breach of Fiduciary Duty against Defendants Herrman, Gibbs and Arion, directly and derivatively on behalf of EMX Group)

93. Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

94. As purported officers and directors of EMX Group, Herrmann, Gibbs and Arion had fiduciary duties to Plaintiffs as shareholders and creditors of the company.

95. Herrmann, Gibbs and Arion breached their fiduciary duties by, among other things, misappropriating the assets and opportunities of EMX Group, including non-public information concerning the target company EMX and the opportunity to acquire EMX, and transferring such assets and opportunities to EMX International I and II, each of which was under identical ownership and control.

96. Herrmann, Gibbs and Arion did so in an attempt to defeat Plaintiffs' rights as shareholders and creditors in EMX Group and to keep the benefits of the ultimate acquisition of EMX to themselves.

97. Given Defendants' position as the officers, directors and major

18

shareholders of EMX Group, and the foregoing history of hostility and misconduct, any demand that EMX Group bring action against Defendants would be futile.

98. As a consequence thereof, Plaintiffs suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

## NINTH CAUSE OF ACTION

### (Misappropriation of Corporate Opportunity against Defendants Herrmann, Gibbs, Arion and EMX International 1, directly and derivatively on behalf of EMX Group)

99. Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

100. As purported officers, directors and shareholders of EMX Group, Herrmann, Gibbs and Arion misappropriated the assets and opportunities of EMX Group—including non-public information concerning the target company EMX and the opportunity to acquire EMX—and transferred them to EMX International 1, which was under control of Defendants as officers, directors and major shareholders.

101. Herrmann, Gibbs and Arion did so in an attempt to defeat Plaintiffs' rights as shareholders and creditors of EMX Group and to keep the benefits of the ultimate acquisition of EMX to themselves.

102. Given Defendants' position as the officers, directors and major shareholders of EMX Group, and the foregoing history of hostility and misconduct, any demand that EMX Group bring action against Defendants would be futile.

103. As a consequence thereof, Plaintiffs suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

## TENTH CAUSE OF ACTION

### (Breach of Fiduciary Duty against Defendants Herrman, Gibbs and Arion, directly and derivatively on behalf of EMX International I)

104.     Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

105.     As purported officers and directors of EMX International I, Herrmann, Gibbs and Arion had fiduciary duties to Plaintiffs, as shareholders and creditors of the company.

106.     Herrmann, Gibbs and Arion breached their fiduciary duties by, among other things, misappropriating the assets and opportunities of EMX International I, including non-public information concerning the target company EMX and the opportunity to acquire EMX, and transferring such assets and opportunities to EMX International II, which was under their ownership and control.

107.     Herrmann, Gibbs and Arion did so in an attempt to defeat Plaintiffs' rights as shareholders and creditors in EMX International I and to keep the benefits of the ultimate acquisition of EMX to themselves.

108.     Given Defendants' position as the officers, directors and major shareholders of EMX International I, and the foregoing history of hostility and misconduct, any demand that EMX International I bring action against Defendants would be futile.

109.     As a consequence thereof, Plaintiffs suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

## ELEVENTH CAUSE OF ACTION

### (Misappropriation of Corporate Opportunity against Defendants Herrman, Gibbs and Arion, directly and derivatively on behalf of EMX International I)

110.   Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

111.   As purported officers and directors of EMX International I, Herrmann, Gibbs and Arion misappropriated the assets and opportunities of EMX International I—including non-public information concerning the target company EMX and the opportunity to acquire EMX—and transferred them to EMX International II, which was under control of Defendants as officers, directors and major shareholders.

112.   Herrmann, Gibbs and Arion did so in an attempt to defeat Plaintiffs' rights as shareholders and creditors in EMX Group and to keep the benefits of the ultimate acquisition of EMX to themselves.

113.   Given Defendants' position as the officers, directors and major shareholders of EMX International I, and the foregoing history of hostility and misconduct, any demand that EMX International I bring action against Defendants would be futile.

114.   As a consequence thereof, Plaintiffs suffered damages in an amount not yet known but believed to be in excess of $1,000,000.

## TWELFTH CAUSE OF ACTION

### (*Quantum Meruit*, as against Defendants Herrmann, Gibbs, Arion, EMX Group, EMX International I and EMX International II)

115.   Plaintiffs repeat and re-allege all preceding paragraphs as if fully set forth herein.

116.   As set forth above, in reliance upon the fraudulent representations of

21

Defendants Herrmann and Gibbs, made on behalf of themselves, EMX Group and EMX International, Mr. Einwohner invested substantial time and effort providing financial advisory, investor relations and business development services in support of the acquisition of EMX.

117.    Mr. Einwohner performed such services in good faith with the expectation that he would be compensated.    Defendants Herrmann, Gibbs, EMX Group, EMX International and EMX International LLC accepted such services.

118.    In equity and good conscience, and to avoid unjust enrichment, Defendants must pay the reasonable value of Mr. Einwohner's services, or no less than $72,500.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    For an award of all of Plaintiffs' damages, including exemplary damages;

B.    For an order awarding the costs of this action, including reasonable attorneys' fees; and

C.    For an order awarding such other and further relief as this Court may deem just and proper.

DATED:   New York, New York
         December 19, 2011


                              Respectfully submitted,

                              LAW OFFICE OF MATTHEW J. PRESS


                        By: _____
                              Matthew J. Press
                              The Chrysler Building
                              405 Lexington Avenue, Seventh Floor
                              New York, NY 10174
                              Telephone:  (212) 922-1111
                              Facsimile:  (347) 342-3882
                              mpress@presslawfirm.com

                              *Attorneys for Plaintiffs*